# United States District Court

4-14-0

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

V.

HENRY MCFLIKER,
JOHN RAFFA,
MICHAEL FULLER,
(Name and Address of Defendant)

## CRIMINAL COMPLAINT

**CASE NUMBER:  00-4079-BSS**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 30, 2000 to April 13, 2000__ in __Broward__ county, in the __Southern__ District of __Florida__ defendant(s) did, (Track Statutory Language of Offense) (describe)

Knowing and intentionally combine, conspire, confederate and agree with each other to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a law enforcement officer to be proceeds of a specified unlawful activity, that is, illegal narcotics trafficking and prostitution business involving foreign commerce, with the intent to conceal and disguise the nature, location, source, ownership, and control of the property believed to be the proceeds of illegal narcotics trafficking and prostitution business involving foreign commerce,

in violation of Title __18__ United States Code, Section(s) __1956(h)__

I further state that I am a(n) __Special Agent, Federal Bureau of Investigation__ and that this complaint is based on the following
                                            Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof: [x] Yes [ ] No

Signature of Complainant
R̶O̶N̶N̶A̶L̶Y̶N̶ ̶C̶R̶A̶I̶N̶ Christina D. Burt
FEDERAL BUREAU OF INVESTIGATION

The Court finds probable cause.
Sworn to before me, and subscribed in my presence,

April 14, 2000                                   at  Ft. Lauderdale, Florida
Date                                                 City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christina D. Burt, duly sworn, depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for one year. The facts contained in this affidavit are based on information provided to me by other federal agents, other law enforcement officers, other witnesses, and my own personal knowledge.

2. On March 30, 2000, an undercover officer was introduced to Henry McFliker in Deerfield Beach, Florida. The undercover officer informed McFliker during this recorded meeting that the undercover had a lot of cash, that the undercover did not want to place it into bank accounts and did not want to fill out forms on the money, which the undercover obtained from the prostitution business and from financing cocaine deals. McFliker stated that he would consider how he could help the undercover and would call the undercover the following Tuesday.

3. On April 4, 2000, McFliker spoke with the undercover officer by telephone. In this recorded conversation, McFliker asked the undercover if the undercover could wire transfer the money from outside the United States; the undercover responded that it would be difficult. McFliker advised that he was still trying to figure out a way to do it.

4. On April 7, 2000, in a recorded conversation, McFliker provided the undercover officer with the telephone number of John Raffa, who McFliker stated could assist the undercover with the money.

5. On April 7, 2000, the undercover called John Raffa and they arranged to meet concerning the laundering of money.

6. On April 10, 2000, the undercover officer met with John Raffa and Michael Fuller in Dania Beach and they discussed the laundering of the undercover's illegal money. Fuller and

Raffa explained to the undercover that they could start with $100,000, which Fuller and Raffa would launder in the United States, charging the undercover 25% for the service. Fuller also stated that there would also be a one time fee of $25,000 to set up a corporation. The undercover stated that he had told McFliker that he would take care of McFliker, but that now it was getting too expensive; Raffa responded that he would take care of McFliker.

7    On April 11, 2000, the undercover spoke with Raffa in a recorded telephone conversation. Raffa asked that the undercover meet with Raffa prior to the meeting with Fuller and suggested that the undercover also give Raffa $100,000 to launder. Raffa stated that he would charge 15 to 20 percent and have the money put in the undercover's Cayman bank account. Raffa further said that he could move up to a million a month, starting with $250,000 a week.

8.    On April 11, 2000, the undercover spoke with McFliker by telephone. In this recorded conversation, the undercover recounted his discussion with Raffa and Fuller. The undercover stated that Raffa had said that he (Raffa) would take care of McFliker; McFliker responded that he was not owed anything, but that now the undercover owed McFliker a favor. McFliker assured the undercover that he could trust Raffa.

9.    On April 12, 2000, the undercover spoke with McFliker by telephone. In this recorded conversation, McFliker stated that he could now help the undercover with his money. McFliker suggested that the undercover give Raffa and Fuller each $50,000 to make sure that they could handle the money transfers, and then bring the rest to McFliker to handle.

10.    On April 12, 2000, the undercover spoke with both Fuller and Raffa in separate recorded conversations and arranged to meet the following day in order for the undercover to deliver the cash.

2

11. On April 12, 2000, the undercover had a recorded telephone conversation with McFliker in which the undercover arranged to deliver $100,000 to McFliker the following afternoon at McFliker's office.

12. On April 13, 2000, the undercover officer met with Fuller and Raffa in Fort Lauderdale. During this recorded and videotaped meeting, the undercover reiterated that the money that was going to be provided was from the financing of cocaine deals. Fuller explained how the money would be laundered, by setting up a corporation for the undercover officer through which account receivables would then be purchased and the money would be transferred through the corporation in order to make it look legitimate. A second undercover officer then delivered $100,000 U.S. currency to Fuller and Raffa, who counted it and accepted it for purposes of laundering. Fuller and Raffa were then placed under arrest.

13. Also on April 13, 2000, the undercover spoke with McFliker in a recorded conversation, during which the undercover informed McFliker that the undercover had provided Raffa and Fuller with $100,000 and would be bringing another $100,000 U.S. currency to McFliker at their scheduled meeting. Later that day, the undercover then met with McFliker in Deerfield Beach. During this recorded meeting, McFliker agreed to take the $100,000; $50,000 of it would be transferred offshore for the undercover in a manner to disguise its origin, which McFliker

acknowledged he understood was from the prostitution business and from the financing of cocaine deals. A total of $100,000 U.S. currency was delivered by a second undercover officer, which was accepted by McFliker, after which he was arrested.

Respectfully submitted,

CHRISTINA D. BURT
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed before
me this ____ day of
April, 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE-JUDGE

4